IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIAN A. MILES, (TDCJ-CID #292396) Plaintiff, | § § § § § § § § § | |
| vs. | | CIVIL ACTION H-15-0456 |
| TDCJ-CID, *et al.*, Defendants. | | |

**MEMORANDUM AND OPINION**

Adrian A. Miles, an inmate of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID"), filed this civil rights lawsuit in February 2015, against prison officials, alleging that the defendants used excessive force, denied him the Ramadan meal, and fabricated disciplinary charges. Proceeding *pro se* and *in forma pauperis*, Miles sues Eleazar J. Galvez, sergeant; Robert M. LeBlanc, correctional officer III; Andrew L. Allen, lieutenant; Dennis B. Mitchell, sergeant; Jimmie L. Bailey, counsel substitute; and Michael Britt, disciplinary captain.

Defendants Galvez, LeBlanc, Allen, Mitchell, Bailey, and Britt have moved for summary judgment. (Docket Entry No. 36). Miles responded. (Docket Entry No. 41). Based on the pleadings, the motion, the summary judgment record, and the applicable law, this court grants the motion for summary judgment filed by the defendants. The reasons for this ruling are stated below.

**I.    The Allegations in the Complaint**

On July 10, 2014, at 11:00 pm., Miles asked Officer LeBlanc to call a sergeant. Miles wished to inform the sergeant that his name had been removed from the list of Muslim inmates who were

authorized to receive the Ramadan meal. Miles asserts that when Sergeant Galvez arrived at Miles's cell, Sergeant Galvez began using various racial slurs against Miles. Miles then asked Sergeant Galvez to speak with Lieutenant Allen. Sergeant Galvez responded that, "Your black ass not seeing no one else." Miles responded that if he were to set a fire, Lieutenant Allen would come and investigate. Sergeant Galvez replied, "How about if I was to just gas your black punk ass."

Sergeant Galvez then ordered Officer LeBlanc to open the food slot, and Sergeant Galvez began spraying Miles with a chemical agent. Miles backed away from the cell doors as the chemical agent began to burn his eyes. Miles tried to wash the chemical agent. Sergeant Galvez sprayed Miles for a second time. This time the chemical spray covered Miles's back, head, and other personal property. Sergeant Galvez called for assistance, and other officers arrived with a video camera.

Miles asserts that Sergeant Mitchell was in charge of conducting the major use of force investigation. Miles was escorted to the infirmary. The nurse informed Miles that Sergeant Galvez claimed that Miles had tried to cut himself. Sergeant Galvez also told the nurse that Miles had reported feeling suicidal. When the nurse asked to see the cut, Miles explained that Sergeant Galvez had falsely claimed that Miles had tried to cut himself in order to justify using the chemical agent. Miles told the nurse that he was not feeling suicidal.

Miles states that he was returned to his cell. Miles told Sergeant Mitchell that the sink was not working and he was unable to rinse off. Sergeant Mitchell said he would talk to Lieutenant Allen. Miles asserts that water to his shower was not restored until the following day. Miles was forced to wash himself with the water from the toilet. Miles asked to be moved to a cell with running water. Miles states that he remained in the same cell and inhaled the fumes from the

chemical agent. He further states that the water from the shower was very hot, and it burned his skin.

Miles states that on July 18, 2014, counsel substitute Bailey served him with a copy of the disciplinary charges. After hearing Miles's statement, counsel substitute Bailey realized that the disciplinary charge did not match with Sergeant Galvez's report. As a result, counsel substitute Bailey rewrote the disciplinary charge to reflect that Miles had only tried to cut himself, instead of actually cutting himself. Miles claims that counsel substitute Bailey and Captain Britt conspired to change the disciplinary charge. Based on Sergeant Galvez's testimony, Miles was found guilty and punished with cell restriction for 30 days; commissary restriction for 45 days; loss of 30 days good time credit; and an order to remain at good time earning class status Line 3.

Miles alleges that Sergeant Galvez charged him with a disciplinary violation in retaliation for the grievances Miles filed against other officers. Miles complains that Captain Britt refused to allow Miles to call witnesses. Miles states that he is legally blind and in the blind program at the Estelle Unit. Miles alleges that he was placed in a cell without water because he is blind.

Miles seeks compensatory damages and punitive damages.

## II.  The Motion for Summary Judgment

### A.  The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to

the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. The Summary Judgment Evidence

Defendants provide the following summary judgment evidence:

1. Relevant portions of Miles's TDCJ grievance records (App. at 3–43).

2.  Relevant portions of Miles's TDCJ Classification and Disciplinary Records (App. at 45–55).

## III. Analysis

### A. Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The purposes of this exhaustion requirement are to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

Because Miles is incarcerated, this lawsuit is governed by the Prison Litigation Reform Act (the "PLRA"). The PLRA prohibits any action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement found in § 1997e(a) applies to all inmate suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures before an inmate can file any suit challenging prison conditions. *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Jones v. Bock*, 549

U.S. 199, 212 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

The Fifth Circuit has acknowledged that "[q]uibbles about the nature of a prisoner's complaint, type of remedy sought, and the sufficiency or breadth of prison grievance procedures" have been foreclosed by Supreme Court precedent on the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a). *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001) (citing *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001)). Thus, the Fifth Circuit has consistently mandated that a prisoner must exhaust his administrative remedies by complying with applicable grievance procedures before filing a federal civil rights lawsuit related to prison conditions. *See, e.g. Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004). The purpose of the grievance is to alert prison officials to a problem, not to notify an official that he may be subjected to a potential lawsuit. *Johnson v. Johnson,* 385 F.3d at 522.

The TDCJ has established a two-part grievance system as authorized by the state legislature. *See* Tex. Admin. Code Ann. § 283.3 (2013). *See also Johnson,* 385 F.3d at 515; *see also Wendell v. Asher,* 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver,* 468 F. Supp.2d 886, 896 (E.D. Tex. 2006) (citing 37 Tex. Admin. Code Ann. § 283.3 (2006)). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson,* 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id.* Step 2 grievances are reviewed at the state level. *See id.* A Texas prisoner must pursue a grievance through

both steps to satisfy the exhaustion requirement. *See id.* (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Mere substantial compliance with the grievance process is not sufficient. *Dillon v. Rogers* 596 F.3d 260, 268 (5th Cir. 2010). *See also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) ("In this Circuit, 'a strict approach' is taken to the exhaustion requirement."(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003))).

While adopting a strict approach to prisoners exhausting their administrative remedies, the Fifth Circuit has determined that it is not necessary for an inmate to file repeated grievances for a continuing deprivation or condition. *Johnson*, 385 F.3d at 521–522. On the other hand, a grievance filed in response to a particular incident does not apply to claims to future incidents whether they are similar or discrete. *Id.* at 522 n.13 ("Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents . . ."). Consequently, an inmate must file a grievance for each separate incident. *Id.*

"The PLRA requires exhaustion of 'such administrative remedies as are available.'" *Jones v. Bock*, 549 U.S. 199, 217 (2007) (quoting § 1997e(a) and rejecting Sixth Circuit rule requiring claimant to name all defendants in initial grievance). Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules. *Woodford*, 548 U.S. at 89-93. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83-84. As noted, the Texas prison system has a two-step formal grievance process. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted." *Id.* (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th

Cir. 2001)). "[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones,* 549 U.S. at 219. The amount of information necessary depends on the type of problem about which the inmate is complaining. *Johnson,* 385 F.3d at 517. This court has noted that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* at 522. However, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and . . . will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id.* Thus, where an inmate complains of improper conduct by a guard, "the administrators responding to the grievance would want to know . . . who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.* at 517.

Miles filed four grievances. Two of those grievance were against unnamed defendants. Miles only filed a Step 1 grievance and did not complete the process by filing a Step 2. (Docket Entry No. 42, pp. 29-43). Miles also filed two other grievances in which he completed both steps of the grievance process. Miles filed Grievance No. 2014182726 against Defendant Galvez for excessive use of force and retaliation after the July 10, 2014, use of force incident. (Docket Entry No. 42, pp. 21–28).

Miles filed Grievance No. 2014186395 against Defendant Bailey for denial of due process during the July 23, 2014, major disciplinary hearing in which Miles received a disciplinary conviction. (Docket Entry No. 42, pp. 3–20).

In his Step 1 Grievance No. 2014182726, against Sergeant Galvez, Miles alleges Sergeant Galvez sprayed him with gas "in retaliation because of the incident that happen[ed] on June 19,

2014." Miles stated that Sergeant Galvez falsely stated that Miles was feeling suicidal and this caused Miles to be transferred to the Jester IV Unit. Except for Sergeant Galvez, Miles did not mention any of the other named defendants. Miles only complained about the discreet actions of Sergeant Galvez. In his Step 2, Miles clarifies that he grieves against Sergeant Galvez alone. Miles explains filing the Step 2 "regarding the violation of the [sic] Sgt. Galve[z]," "so that I can file my 1983 with the court." The Step 2 addresses Miles's retaliation and use of force claims against Sergeant Galvez. These grievances do not address any other issues or any of the other named defendants.

The Fifth Circuit has noted that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Johnson*, 385 F.3d at 522. However, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and ... will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id.* Thus, where an inmate complains of improper conduct by a guard, "the administrators responding to the grievance would want to know ... who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Id.* at 517.

Because Miles grieves with such particularity about Sergeant Galvez's actions and motivations—and Sergeant Galvez's alone—his grievance against Sergeant Galvez is properly exhausted but is insufficient to alert administrators of his similar claims against LeBlanc, Allen, and Mitchell. Therefore, under Fifth Circuit case law, he has not exhausted his claims against them.

In his Step 1 grievance against Bailey, Number 2014186395, Miles alleges that Bailey helped

Sergeant Galvez cover up his excessive use of force by changing the disciplinary case before the July 23, 2014, hearing. Miles asserts Miles was initially charged with inflicting an injury to himself by cutting his arm with a razor. Miles explains that Bailey later changed the charge to threatening to inflict an injury on himself. Miles contends this change denied him adequate notice, which he reiterates in his Step 2. While Miles also challenges the punishment rendered in his Step 2, he does not mention any other defendant or issue. Though Miles repeats his complaints against Sergeant Galvez, Miles does not grieve against any other defendant or other issue concerning his disciplinary hearing. Though Miles has alleged that Captain Britt denied him the right to call witnesses at his disciplinary hearing, he mentions neither Captain Britt nor being denied the right to call witnesses in his grievance against Bailey.

Miles did not file any grievances about missing Ramadan meals or against Defendants Allen, LeBlanc, Mitchell, or Britt. As a matter of law, § 1997e requires the court to dismiss that free-exercise claim and any claim alleged against those defendants.

Miles argues that he should not be required to exhaust administrative remedies because he is legally blind. (Docket Entry No. 41, p. 9). The Fifth Circuit Court of Appeals has adopted a strict approach to the exhaustion requirement. *See Ferrington v. La. Dep't of Corrections*, 315 F.3d 529, 532 (5th Cir. 2002) (finding that blindness did not excuse the plaintiff from exhausting administrative remedies); *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001) (affirming dismissal for failure to exhaust because the inmate "incorrectly filed an administrative appeal rather than a disciplinary appeal"); *Parker v. Adjetey*, No. 03–40787, 2004 WL 330866 *1 (5th Cir. Feb. 20, 2004) (rejecting a claim of exhaustion based on an inmate's coma because, after he recovered, he made no attempt to file a grievance).

Miles has not raised genuine disputes of material fact as to whether he exhausted administrative remedies at this stage. The competent summary judgment evidence in this case shows that there is no genuine issue of material fact as to whether Miles failed to properly exhaust the available grievance procedure. The summary judgment evidence shows that Miles failed to comply with the established rules for submitting his grievances in a procedurally correct manner through all steps of the grievance procedure for each of his claims. Accordingly, the defendants' motion for summary judgment should be granted.

**B.    The Claims Barred by *Heck v. Humphrey***

Under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Court must dismiss a complaint brought pursuant to 42 U.S.C. § 1983, when the civil rights action, if successful, would necessarily imply the invalidity of a plaintiff's conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck* requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence. This is known as the "favorable termination rule."

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the *Heck* rule to disciplinary cases, meaning that a challenge to a disciplinary case, or a claim which would necessarily imply the invalidity of a disciplinary case, may not proceed in a civil rights lawsuit until he satisfies the *Heck* conditions. Defendants argue that the Fifth Circuit applies *Heck* and *Edwards* to situations where the inmate argues that he was the victim of excessive force, but had received a disciplinary case for assaulting an officer during the incident. The defendants point to *Hadnot v.*

*Butler*, 332 F. App'x 206 (5th Cir. 2009), in which the plaintiff Johnny Hadnot asserted that Sgt. Butler and Officer Alexander used excessive force on him while he was being moved from one cell to another. Hadnot stated that the officers would not let him return to his former cell to retrieve his mattress and bedding, and construed his actions as a refusal to enter his newly assigned cell. He also stated that the officers got in his face and cursed at him, telling him to get back in the cell. They then forced him to the ground without provocation and began kicking him in the head and back. Hadnot received a disciplinary case for assaulting an officer and failure to relinquish hand restraints. He forfeited 365 days of good time credits as a result of his conviction in the disciplinary case. Hadnot brought suit, raising various claims including one for excessive force. With regard to that claim, the district court stated as follows:

> Hadnot seeks monetary damages for a use of force that resulted in a disciplinary conviction and a loss of good-time credits. To recover damages for an allegedly 'unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, [under] 28 U.S.C. § 2254.' *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994). A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. *Id.* Therefore, if a judgment in favor of the plaintiff would 'necessarily imply the invalidity of his conviction or sentence,' then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* In this context, a 'conviction' includes a prison disciplinary proceeding that results in a change to the prisoner's sentence, such as the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed.2d 906 (1997).
> Hadnot complains that Sergeant Butler and Officer Alexander used excessive force against him on July 11, 2007. As Hadnot discloses in his more definite statement, however, he was convicted of

> disciplinary charges, including assault on an officer, in connection with the July 11, 2007 incident in which the complained of force was used. (Doc. # 9, at ¶ 20). Hadnot concedes that he lost previously earned good-time credits as a result of this conviction and that the conviction has not been overturned. (*Id.* at ¶¶ 20–21).
>
> Hadnot's excessive-force claim would, if true, necessarily implicate the validity of his disciplinary conviction. Because Hadnot's conviction has not been overturned, his civil rights claims against the defendants are barred by *Heck*. *See Edwards*, 520 U.S. at 647–48; *see also Hudson v. Hughes*, 98 F.3d 868, 872–73 (5th Cir. 1996) (holding that allegations of excessive force and false arrest are not cognizable under the doctrine in *Heck* if a successful civil rights claim would call into question the validity of the plaintiff's conviction); *see also Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999) (holding that *Heck* bars a civil rights claim for excessive force and false arrest where the plaintiff has been convicted of assaulting an officer); *Donnelly v. Darby*, 81 F. App'x 823, 2003 WL 22794388 (5th Cir. 2003) (unpublished per curiam) (rejecting excessive force claims from a state prisoner who received a disciplinary conviction arising from the same incident); *Powell v. Maddox*, 81 F. App'x 476, 2003 WL 22734607 (5th Cir. 2003) (unpublished per curiam) (same).
>
> Because Hadnot's claims are not cognizable under 42 U.S.C. § 1983, the complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted at this time. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (explaining that claims barred by *Heck* are 'dismissed with prejudice to their being asserted again until the *Heck* conditions are met').

*Hadnot v. Butler,* civil action no. 4:08cv1304, 2008 WL 4200815 (S.D. Tex., Sept. 9, 2008).

The Fifth Circuit affirmed this decision, stating:

> Hadnot also maintains that he has raised a viable Eighth Amendment claim against these defendants because they attacked him without provocation. Hadnot has not shown that his disciplinary conviction has been overturned. *See Edwards v. Balisok,* 520 U.S. 641, 646–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Further, Hadnot's suit is barred by Heck due to the nature of his claims and allegations. *See DeLeon v. City of Corpus Christi,* 488 F.3d 649, 656–57 (5th Cir. 2007).

*Hadnot v. Butler*, 332 F. App'x 206 (5th Cir. 2009).

In *Powell v. Maddox,* civil action no. 2:97cv280, 2003 WL 21518371 (N.D. Tex., April 15, 2003), *aff'd,* 81 F. App'x 476 (5th Cir., November 30, 2003), the plaintiff Tony Powell asserted that he was walking with other inmates when the defendant Michael House singled him out and called him over, subjecting him to verbal abuse for allegedly having run into House. Powell tried to explain, and Maddox handcuffed him and verbally abused him. Powell stated that he did not understand, and Maddox pushed and struck him, trying to take him to the ground. The defendants House, Wilson, and Atchley helped Maddox by kicking and striking Powell and twisting his legs. Another defendant, Horn, did nothing to prevent the attack but instead stood by laughing. Powell received a disciplinary case for turning while handcuffed and attempting to charge at House and Maddox, necessitating a use of force. The district court held that a grant of relief on Powell's use of force claim would necessarily call into question the validity of the disciplinary determination of guilt, and so this claim was not cognizable under 42 U.S.C. § 1983 absent a showing of favorable termination of the disciplinary case. Because Powell failed to show that the disciplinary case had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, his use of force lacked an arguable basis in law and was frivolous until such time as such a showing was made.

The Fifth Circuit affirmed this decision, stating:

> Powell alleged that prison officials used excessive force on him in an altercation that resulted in his loss of good time credits, among other things. A prisoner attacking a disciplinary proceeding that resulted in the loss of good time credits cannot bring a 42 U.S.C. § 1983 action seeking damages until his 'conviction' in that proceeding has been expunged, reversed, or otherwise set aside. *Edwards v. Balisok,* 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed.2d 906 (1997); *Clarke v. Stalder,* 154 F.3d 186, 189 (5th Cir. 1998) *(en banc).* Powell is

O:\RAO\VDG\2015\15-0456.g01.wpd

14

> unable to show that his disciplinary conviction has been set aside. *See Randell v. Johnson,* 227 F.3d 300, 301 (5th Cir. 2000). The judgment of the district court is affirmed.

*Powell v. Maddox,* 81 F. App'x 476 (5th Cir. 2003).

In the present case, Miles received a disciplinary case stating that he "threatened to self-inflict an injury to his body by cutting his arm with a razor blade." (Docket Entry Nos. 42, 45). Miles was found guilty and punished with cell restriction for 30 days; commissary restriction for 45 days; loss of 30 days good time credit; and an order to remain in good time earning class status Line 3.

The summary judgment evidence does not show that this case has been overturned, expunged, or otherwise set aside. Like Hadnot, Miles maintains that he has raised a viable Eighth Amendment claim because he was assaulted without provocation. This claim, if proven, casts doubt on the viability of the disciplinary conviction, in which Miles was convicted of threatening to inflict harm on himself with a razor blade. Because Miles, again like Hadnot, has failed to show that his disciplinary conviction, including the forfeiture of good time, has been overturned, expunged, or otherwise set aside, his use of force claim is barred by *Heck* and *Edwards,* as the Fifth Circuit explained in *Hadnot* and *Powell.*

In *Null v. Sanders,* civil action no. 2:00cv58, 2001 WL 256111 (N.D. Tex., March 9, 2001), *aff'd,* 273 F.3d 1094, 2001 WL 1085077 (5th Cir., August 28, 2001), the plaintiff David Null complained that Officer Rojas initiated an unprovoked and unjustified use of force against him, and Officer Valenzuela joined in. The evidence showed that he received disciplinary cases for striking an officer, trafficking and trading, and refusing to obey an order. In his § 1983 lawsuit, Null argued that he was not challenging the due process which he received and that if successful, his claims would not demonstrate the invalidity of these disciplinary convictions. The district court disagreed,

holding that "it appears that a finding in plaintiff's favor, on his claims against Rojas and Valenzuela, would necessarily imply the invalidity of the disciplinary case for striking an officer." The district court therefore dismissed Null's claim until he could show that the disciplinary case had been overturned or otherwise set aside.

The Fifth Circuit affirmed, stating:

> Null argues that because he did not lose any good time credits through his disciplinary proceeding, he is no longer "in custody" pursuant to that proceeding so that the requirements of *Heck* need not be fulfilled. Null has failed to show, however, that he did not in fact lose good time credits as a result of the disciplinary proceeding. Consequently, before he could obtain money damages for the alleged assault by Rojas and Valenzuela, Null would have to show that the result of the disciplinary hearing, in which he was charged with striking an officer, has been overturned. As Null concedes that his disciplinary conviction has not been overturned, his claims are barred by *Heck* and *Edwards*.

Similarly, Miles contends that he did nothing to provoke the assault, which was allegedly carried out without provocation by Sergeant Galvez. The disciplinary case charged that Miles threatened to inflict harm on himself with a razor blade. A finding in Miles's favor on his use of force and retaliation claims would necessarily imply the invalidity of the disciplinary case, in which disciplinary case Miles lost 30 days of good time. Thus, Miles cannot proceed on his use of force claim without showing that the disciplinary case has been overturned, expunged, or otherwise set aside, which he has not done. The defendants' motion for summary judgment should be granted as to this claim.

Miles asserts that he inquired about why he did not receive his Ramadan meal. Miles asserts that Sergeant Galvez chose to harass him, then sprayed him with gas. He claims Sergeant Galvez did this in an act of retaliation, but lied about it on the disciplinary case—claiming that force was

necessary because Miles was harming himself—to cover it up. Miles claims that Bailey in her role as a counsel substitute helped Sergeant Galvez cover up the lie by changing the disciplinary case—from actual self-harm to a threat of self-harm—to align with the nurse's observation that Miles had no marks on his body. Miles claims he received a disciplinary conviction and loss of good time as a result of their cover-up, and now seeks damages under § 1983. Miles's claims for retaliation, excessive use of force, and denial of due process are inextricably bound and directly bear on the validity of his conviction. His due process claim is contingent on Bailey covering up for Sergeant Galvez's alleged excessive use of force, which itself is contingent on Sergeant Galvez's retaliatory motive and need to lie on the disciplinary case. Like Hadnot, Powell, and Null, a judgment in Miles's favor on even one claim would imply the invalidity of his disciplinary conviction.

Where a judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence," then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Miles's claims for retaliation, excessive use of force, and denial of due process—against all defendants—are barred by *Heck* and should be dismissed as a matter of law.

Additionally, the court notes that Miles lost 30 days of good time credits. Miles states that he is not eligible for release on mandatory supervision. (Docket Entry No. 41, p. 15). Miles has no liberty interest in his good time credits or other punishments imposed as a result of the disciplinary hearing; thus, he may not complain about the denial of due process. *See Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007); *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002); *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

## C. Claims Against Counsel Substitute

As to Miles's claim against defendant Bailey, his counsel substitute, a counsel substitute representing an inmate in prison disciplinary proceedings does not act under color of state law for purposes of claims brought under Title 42, United States Code, section 1983. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Consequently, Miles is unable to show one of the two essential elements necessary to state a civil rights claim. *Adickes v. Kress*, 398 U.S. 144, 149 (1970)(two elements are necessary for recovery in this type of suit: (1) the plaintiff must show the defendant deprived him of a right secured by the Constitution and laws of the United States; and (2) the plaintiff must show the deprivation was committed under color of law, usually by a state official or a private individual in conspiracy with such an official).

## IV. Conclusion

The motion for summary judgment filed by Defendants Galvez, LeBlanc, Allen, Mitchell, Bailey, and Britt, (Docket Entry No. 36), is GRANTED. This civil action is DISMISSED with prejudice.

SIGNED at Houston, Texas, on ____Dec. 13____, 2017.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE

O:\RAO\VDG\2015\15-0456.g01.wpd

18